UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS HORTON,

        Petitioner,

                              Case No. 1:03-CV-78
v.                                     Hon. Gordon J. Quist

UNITED STATES OF AMERICA,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

       This matter is before the court on the petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons as set forth below, I recommend that petitioner's motion be granted.

**Background**

       On November 21, 2001, petitioner entered a plea of guilty with the Honorable Gordon J. Quist for conspiring to possess methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii). Judgment (Feb. 26, 2002). Then, on February 25, 2002, the court sentenced petitioner to 144 months' imprisonment, five years of supervised release, a fine of $2,500 and a special assessment of $100.00. Sentencing Trans. at 25. The court also advised petitioner of his right to appeal his sentence. *Id.* at 27. Petitioner did not appeal the sentence.

On January 30, 2003, petitioner filed a timely § 2255 motion raising the following issues:

> A. Retaining attorney was ineffective by failing to file an appeal, and fell [below] an objective standard [of] reasonableness.
>
> B. The Federal District Court's erroneous sentencing unlawfully increased the petitioner's sentence by enhancement of 4 points, of leader, without [an] independent factual finding to support the enhancement, in violation of [petitioner's] due process of law.
>
> C. The probation officer in this case has improperly designated methamphetamine as a Schedule II controlled substance, counsel failed to object.

The court reviewed the petition and concluded that "[a]ll arguments boil down, however, to whether Petitioner's counsel rendered ineffective assistance by not filing a notice of appeal on behalf of Petitioner." Order (March 21, 2003). After noting that the record reflected only petitioner's version of events, the court referred the case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation.

After referral of the case, the undersigned ordered respondent to file an answer or other pleading. Respondent filed the answer on April 30, 2003 and petitioner filed a "response" to the answer. Then, on June 12, 2003, petitioner filed a "Motion for leave of first addendum to attach, to motion under Title 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence by a person in federal custody" (docket no. 12). In this motion, petitioner apparently seeks to add two additional claims to his pending § 2255 petition:

> (1) The [burden] of proof that a schedule II methamphetamine was established in this case.

>   (2)   The defense counsel was ineffective in representing and maintaining the right of the petitioner to due process.

Then, on October 6, 2003, petitioner filed a motion for summary judgment (docket no. 21).

The Federal Public Defender's Office was appointed to represent petitioner and his ineffective assistance of counsel claim was set for an evidentiary hearing on October 29, 2003. At petitioner's request, the hearing was adjourned to December 1, 2003. After the hearing, the court set a briefing schedule. Both parties requested extensions to file their respective briefs, the most recent brief being filed in July 2004. This matter is now ripe for decision.

## I.   Petitioner's motions to add claims and for summary judgment

At the outset of the evidentiary hearing in this matter, petitioner's counsel noted that there were three issues raised in the § 2255 petition before the court: ineffective assistance of counsel; the propriety of the four-level sentencing enhancement at sentencing; and an issue regarding the scoring as it related to methamphetamine. Hearing Trans. at 6. In his *pro se* motion to add claims (docket no. 12), petitioner seeks to add two new claims to his habeas petition (i.e., whether methamphetamine is a schedule II drug and the alleged ineffectiveness of counsel in addressing inaccuracies in the PSI). In his *pro se* motion for summary judgment, petitioner contends that his counsel was ineffective for allowing him to plead guilty to a crime that was not supported by the evidence (docket no. 21). In essence, petitioner's *pro se* motion for summary judgment is an attempt to add yet another claim to the habeas petition.

FED. R. CIV. P. 15(a) provides that a party may amend a pleading upon leave of court and "that leave shall be freely given when justice so requires." Neither party addressed these new issues at either the December 3, 2003 evidentiary hearing or in their post-hearing briefs. Justice does

not require amendment in this case, where petitioner's appointed counsel has abandoned these proposed *pro se* amendments. Accordingly, the undersigned recommends that petitioner's *pro se* motions to add claims (docket no. 12) and for summary judgment (docket no. 21) be DENIED.

### II.     Petitioner's § 2255 claims

An action brought pursuant to 28 U.S.C. § 2255 is "an independent and collateral inquiry into the validity of the conviction." *United States v. Hayman*, 342 U.S. 205, 222 (1952). The statutory section allows a federal prisoner to challenge a sentence imposed in violation of the Constitution or laws of the United States. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not the guilt or innocence of a defendant that is at issue in a § 2255 proceeding, but rather the validity and fairness of the proceedings against him. *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980).

A petitioner is entitled to habeas relief under § 2255 on the basis of constitutional grounds if the record reflects an error of constitutional magnitude which had a substantial and injurious effect on the jury's verdict or the petitioner's plea. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). To establish a right to habeas relief on nonconstitutional error (i.e., statutory or rule error, such as under the federal sentencing guidelines), the record still must reflect an error of constitutional dimension, such as a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *See Reed v. Farley,* 512 U.S. 339 (1994); *Nagi v. United States,* 90 F.3d 130, 133-34 (6th Cir. 1996).

A motion for habeas relief under § 2255 may not substitute for bringing a direct appeal. *See Grant v. United States*, 72 F.3d 503 (6th Cir. 1996); *United States v. Walsh*, 733 F.2d

31, 35 (6th Cir. 1984). As a general rule, the failure to raise an argument at trial or on direct appeal waives it for collateral review under § 2255 unless the petitioner can show cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 164-65 (1982); *Elzy v. United States*, 205 F.3d 882, 885 (6th Cir. 2000); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000). However, the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

### III. Analysis of petitioner's § 2255 claim

#### A. Testimony at Evidentiary Hearing

##### 1. Petitioner's testimony

Petitioner testified that he was not satisfied with his sentence of 144 months and expected an appeal to be taken. Evid. Hear. (Dec. 1, 2003) at 57. Petitioner told his counsel that he wanted an appeal regardless of whether the Government's Counsel (Mr. Meyer) filed a Rule 35 Motion (for correction or reduction of his sentence). *Id.* at 57-58; *see also* Fed. Rules Crim. Proc. 35. Immediately after sentencing, petitioner met with his counsel, told him the sentence was more than he expected, and twice told counsel that he wanted to appeal the sentence. Evid. Hear. at 58-59. This discussion lasted 10 to 15 minutes and counsel did not explain any possible advantages or disadvantages to taking an appeal. *Id.* at 59. Counsel took no notes during the discussion. *Id.* at 59. Petitioner also asked counsel to contact the Government's attorney regarding further cooperation in the case. *Id.* Petitioner had no other face-to-face discussions with counsel. *Id.* at 59-60.

In a letter dated March 9, 2002, petitioner asked his counsel to send correspondence to his parent's address at 2575 Plainview, Kalamazoo, MI, because he would be in transit to a federal

prison. *Id.* at 61-62. This letter was intended to thank counsel for the work done on the case and "to show him that I appreciated the work that he had done and that I expected him to continue on the case." *Id.* at 62. The letter stated in part, "I would like to thank you for your continuing work." *Id.* When asked to explain the letter, petitioner testified as follows:

> I meant that I expected further work on the case. I expected my appeal to be done. I expected him to continue to work with Robert Jones and Mr. Meyer to correct my sentence.

*Id.* Petitioner also sent a thank you note to the Government attorney, Mr. Meyer, for taking steps that could have resulted in a more favorable result for petitioner. *Id.* at 84. Petitioner understood that the $5,000.00 retainer paid to counsel meant that "Mr. Bland was going to continue through my case" until the retainer money was used up. *Id.* Petitioner further testified that some of the $5,000.00 retainer remained after his sentencing. *Id.* at 62-63.

Petitioner testified that he wrote another letter to his counsel, dated March 26, 2002, in which he tried to bring up issues for appeal on his sentencing, such as his leadership role. *Id.* at 79. However, petitioner admitted that he did not use the term "appeal" in his March 26th letter. *Id.* at 80. Petitioner's March 26th letter does not discuss petitioner's leadership role as an appealable issue. Rather, the letter refers only to changing petitioner's criminal category with respect to 3 points added for misdemeanors for which petitioner never received jail time. Petitioner's letter to Bland, 3/26/02, Govt. Exh. 1.7. In his letter, petitioner referred to another prisoner whose points were removed for each misdemeanor involving a sentence of less than 62 days. Counsel's three sentence response states that he spoke with Rich Griffiths (a probation officer) on April 8, 2002 and "[a]s far as we can determine, the points for your misdemeanors are appropriate." Bland's letter to petitioner,

6

4/8/02, Govt. Exh. 1.8.  Counsel's letter also states, "[i]n the meantime, if you have any further questions or problems, please do not hesitate to contact me." *Id.*

Petitioner testified that he first learned that no appeal had been filed in December 2002. *Id.* at 64. He sent a letter to his counsel, dated December 11, 2002, which began with the following statement, "I'm writing again to check on the status of an appeal." *Id.* at 64; Petitioner's letter to Bland, 12/11/02, Govt. Exh. 1.9. In this letter, petitioner (1) asked whether counsel had contacted the Government attorney regarding cooperation and the possibility of a time reduction, (2) requested information regarding the related cases, (3) asked whether "anyone else on the case received the leadership role," and (4) asked whether it was "still possible to have the leadership role taken off my sentence." *Id.* At that time (December 2002), petitioner testified that he had no understanding of either the time frame for filing an appeal or how the appeal process operated in his case *Id.* at 76, 80. Petitioner stated that he assumed the court was notified of his appeal when he told his counsel that he wanted an appeal. *Id.* at 76-77.

Petitioner received a letter from his counsel dated December 16, 2002, which advised him that no appeal had been filed. Evid. Hear. at 65. Counsel's December 16th letter stated (1) that "[a]s my earlier correspondence indicated, there is no appeal filed on your behalf," (2) that there had been no contact with the prosecutors, (3) that he had no information on the related cases, and (4) that "I am unable to respond to the rest of your letter." Bland's letter to petitioner, 12/16/02, Govt. Exh. 1.10. Finally, counsel's letter again invited petitioner to contact him if he had "any further questions or problems." *Id.* Immediately after receiving the December 16th letter, petitioner went to the law library to begin working on his § 2255 motion. Evid. Hear. at 65.

7

### 2.     Counsel's testimony

Petitioner's counsel, Mr. Bland, testified as follows. He received a $5,000.00 non-refundable retainer to represent petitioner at trial. *Id.* at 92-93, 124-25. He would normally file a notice of appeal without extra charge, but would require an additional fee to brief and argue the appeal. *Id.* at 90-92. He testified that he did not think that petitioner wanted an appeal. *Id.* at 99. He met with petitioner immediately after the sentencing to discuss the sentence, to see if petitioner wanted to appeal and "see how he was doing in general." *Id.* at 106-07. Mr. Bland testified that, "to the best of his recollection," petitioner did not want to file an appeal at that point in time. *Id.* at 107, but he could not say this with certainty.

The following colloquy occurred between the Government's attorney (Mr. Meyer) and Mr. Bland:

> Mr. Meyer.   Did [petitioner] expressly tell you whether or not he wanted to file an appeal?
>
> Mr. Bland.    The way I understood it, he didn't want one at that time.

*Id.*

Mr. Bland did not have a precise recollection of the discussions held at that meeting, testifying as follows:

> I don't remember blow by blow what we discussed. The one thought that keeps coming to me in my mind that I think we did discuss was the idea that if we couldn't get two points down [on the sentence scoring before Judge Quist with the Government's attorney] joining us then I didn't see how you were going to get two points down on appeal, something like that. . . . I think the odds would have been against us being granted that two points on appeal.

Evid. Hear. at 107.

8

Mr. Bland could not recall his assessment given to petitioner, but thought that he may have used the following phraseology, "if we couldn't get two points with, you know, Mr. Meyer joining us I don't know how we're going to do it, something along those lines." *Id.* Mr. Bland also recalled telling petitioner that "the odds were against him" on appeal. *Id.* at 119. Nevertheless, Mr. Bland admitted that a non-frivolous, appealable issue could have resulted from Judge Quist's decision to apply a four level enhancement for petitioner's leadership role, because both Bland and Mr. Meyer argued that petitioner should have received only a two level enhancement. *Id.* at 122.

Mr. Bland dictated a letter to petitioner immediately after his post-sentencing meeting with petitioner. *Id.* at 108. The letter stated as follows:

> February 26, 2002
>
> Mr. Travis Horton
> 2575 Plainview
> Kalamazoo, MI 49009
>
> RE:    USA v Horton
>
> Dear Travis:
>
> As you know, your sentencing was held in this matter on February 25, 2002.
>
> There was a hearing as to your objection for the three points decrease that the pre-sentence report did not recommend that you be awarded and the four-point increase for being an organizer or leader.
>
> In addition, there was a motion regarding Mr. Meyer's request for you to receive a four level deduction for significant assistance to the authorities pursuant to 5K1.1.
>
> The Court did grant you your three level decrease for acceptance of responsibility. After a lengthy finding on the record, the Court refused to remove the four level increase for being an organizer or

9

> leader. Additionally, you did not receive [sic] four-point decrease pursuant to Mr. Meyer's motion.
>
> Accordingly, you were sentenced to 144 months in custody. You were also assessed five years of supervised release and a $2,500.00 fine.
>
> We were given appeal papers, and you have 10 days from February 25, 2002, in which to file an appeal. It is my understanding from talking with [sic] after Court that you will not be doing so.
>
> In the meantime, it certainly has been a pleasure to represent you, if you have any further questions or problems, please do not hesitate to contact me.

Bland's letter to petitioner, 2/26/02, Govt. Exh. 1.4.

Mr. Bland did not recall receiving any mail within 30 days after mailing the February 26th letter. Evid. Hear. at 109. He was surprised to receive petitioner's December 11th letter, which contained the reference to the appeal. *Id.* at 109-110. Mr. Bland testified that, to the best of his recollection, the December 11th letter was the first time he heard or saw petitioner "mention any sort of intention to file an appeal." *Id.* at 109. He wrote back advising petitioner that there was no appeal filed on his behalf. *Id.* at 110. Mr. Bland testified that to the best of his recollection, and after reviewing his file, he received no correspondence from petitioner requesting an appeal be filed from February 25, 2002 until sometime in December 2002. *Id.* Mr. Bland also testified that petitioner's mother or sister may have called him to ask about an appeal during that time period, but such a call would have occurred closer to December 11th than to the sentencing date of February 25th. *Id.* at 110-11.

### 3.    Carol Horton's testimony

Finally, petitioner's mother, Carol Horton, gave the following testimony. She paid Mr. Bland $5,000.00 to represent petitioner. *Id.* at 8, 18. She testified that she resided at 2575 Plainview, Kalamazoo, MI, across the street from petitioner, who resided at 2618 Plainview. *Id.* at 10. She identified Mr. Bland's February 26, 2002 letter, which was mailed to petitioner at her address (2575 Plainview). *Id.* She testified that petitioner was incarcerated at the Newaygo County Jail at that time. *Id.* at 10-11. Ms. Horton first saw the letter in October 2002, when she was preparing to sell petitioner's house. *Id.* at 11. The envelope was unopened had been placed with some letters related to petitioner's bankruptcy. *Id.* at 11-12. She opened the letter but did not send it to petitioner. *Id.* at 12, 25, 40. She placed the letter with the bankruptcy papers even though the letter did not involve the bankruptcy. *Id.* at 40-41. She testified that the mail is placed on the kitchen counter at her home and that she had no idea how the February 26th letter moved from the counter to the folder containing petitioner's bankruptcy papers, but speculated that her husband or daughter may have moved it. *Id.* at 24-25, 33-34, 39.

She also testified that while she received three letters from Mr. Bland at her house, most of the other mail from Mr. Bland was sent to petitioner's residence. *Id.* at 34, 37-38. Ms. Horton also collected mail for petitioner's wife, who was involved in a separate criminal proceeding. *Id.* at 35-36. In addition, Ms. Horton testified that her mother is in a nursing home, and that this mail was also delivered to her residence at 2575 Plainview. *Id.* at 36-37.

Ms. Horton testified that she had reviewed petitioner's presentence investigation report before the sentencing and was aware that petitioner faced a possible sentence of 24 to 30 years in prison. *Id.* at 20. She was at the sentencing and knew that Judge Quist had sentenced

11

petitioner to 12 years in prison and was glad that petitioner did not receive 24 years' imprisonment. *Id.* at 21. It was her understanding from a letter that came to petitioner that "he was looking at 12 years," but that with his cooperation it would go down to five to seven years. *Id.* at 25; Letter from Mr. Meyer to Mr. Bland, May 3, 2001, Petitioner's Exh. 6 attached to petitioner's supplemental memorandum.[1] She testified that petitioner never told her than he wanted an attorney to file an appeal. *Id.* at 22. The first she had heard of petitioner's request for an appeal was in June 2003 (i.e., several months after the filing of the present § 2255 petition). *Id.* at 22-23.

### B. Petitioner's claim of ineffective assistance of counsel

In order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003), citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The test for assessing ineffective assistance of counsel for failing to file a notice of appeal is the two-pronged inquiry of *Strickland*. *See Roe v. Flores-Ortega*, 538 U.S. 470, 477 (2000); *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003). The first prong of this inquiry requires the court to ask whether the trial counsel's performance fell below the reasonably expected professional standard. *Regalado*, 334 F.3d at 524. Under *Strickland*, courts must judge the

---

[1] In the May 3, 2001 letter, Mr. Meyer suggested that petitioner "will certainly get convicted" of the charges and that "[h]e will then face at the very least 12 years in a federal penitentiary without parole." Mr. Meyer then suggested that petitioner cooperate with the government. The letter does not refer to a sentence reduction from 12 years to five to seven years.

reasonableness of counsel's challenged conduct on the facts of the particular case viewed at the time of the conduct. *Id. citing Roe*, 528 U.S. 477. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Roe*, 528 U.S. at 477. The second prong of the *Strickland* test requires the court to determine whether counsel's deficient performance prejudiced the defendant. *Id.* To meet this requirement, the defendant must demonstrate "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 694.

The court applies three rules in determining whether counsel was deficient for not filing a notice of appeal. First, it is clearly "professionally unreasonable" for a lawyer to fail to file an appeal when he is specifically instructed to do so by client. *Regalado*, 334 F.3d at 524-25, *citing Roe*, 528 U.S. at 477. Counsel's failure to perfect a direct appeal upon a client's request is a *per se* Sixth Amendment violation. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). In such cases, "a defendant is entitled to a delayed appeal and need not show any likelihood of success on the merits." *Regalado*, 334 F.3d at 525.

Second, in cases where the client has neither told his counsel to file an appeal nor told his counsel not to file an appeal, the court must evaluate counsel's performance by determining whether counsel "consulted" with the defendant about the benefits and drawbacks of bringing an appeal. *Id., citing Roe*, 528 U.S. at 478. A "consultation" occurs by counsel "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe*, 528 U.S. at 478. If counsel has consulted with the defendant, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

Third, if counsel fails to consult with the defendant, then the court must address the question of whether the failure to consult, by itself, indicates deficient performance. *Id.* The failure to consult with a client about an appeal, however, does not necessarily imply deficient performance. *See id.* at 479 ("We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense.) (Emphasis in original.)

### C. Findings of fact

After a thorough review of the facts in this case, the court finds that a mis-communication occurred between petitioner and his counsel. Petitioner's counsel has at best only a vague recollection of the actual meeting with petitioner and relies on his February 26, 2002 letter to verify the events that occurred at the meeting. Unfortunately, this letter was mailed to petitioner's mother at her home address, rather than directly to petitioner at the Newaygo County Jail. Then, the letter remained mixed in with petitioner's bankruptcy papers until it was discovered in October 2002. The court finds petitioner's mother's testimony credible regarding the accidental loss of the letter. There is no question that, in addition to handling her own mail, petitioner's mother was handling mail for her son's criminal matter, her daughter-in-law's criminal matter, her son's bankruptcy and her own elderly mother. It is possible that the February 26th letter could have been misplaced and that she did not recognize the significance of the letter when she opened it several months later. Any misunderstanding between the parties was compounded by petitioner's failure to receive the February 26, 2002 letter. Had petitioner received this letter in a timely manner, then he would have had an opportunity to clarify any mis-communication with Mr. Bland.

Petitioner's subsequent conduct supports the court's conclusion that a misunderstanding occurred between petitioner and his counsel. Petitioner sent his counsel at least two letters within weeks of his sentencing, which suggests that petitioner believed counsel was still acting for him. While counsel states that he did not have a post-sentencing meeting with petitioner to discuss the cost of the appeal, counsel continued to respond to petitioner's correspondence, pursued matters on petitioner's behalf and admitted that petitioner still had a balance of about $900.00 left on his retainer. In other words, counsel did not take any steps to "close out" this file. Finally, although petitioner's December 11, 2002 letter appears to include self-serving statements (e.g., referencing "my appeal"), I must accept the letter at face value given the chronology of events in this case.

Having found that a mis-communication or misunderstanding occurred between petitioner and his counsel, the court must determine the legal effect of this series of events. As a general rule, counsel's failure to perfect a direct appeal upon a client's request is a *per se* Sixth Amendment violation. *Ludwig*, 162 F.3d at 459. In such cases, "a defendant is entitled to a delayed appeal and need not show any likelihood of success on the merits." *Regalado*, 334 F.3d at 525. Here, however, counsel did not disregard a clear request to file an appeal; rather, counsel did not realize that petitioner desired to have an appeal filed until he received petitioner's December 11, 2002 letter. Nevertheless, I conclude that petitioner's counsel bears the responsibility for the missed deadline. Prejudice is presumed under the *Strickland* test when a mis-communication or misunderstanding between the client and counsel results in counsel's failure to file or perfect an appeal. *See Edwards v. United States*, 246 F. Supp.2d 911, 915-16 (E.D. Tenn. 2003); *Turner v. United States*, 961 F. Supp. 189, 190-91 (E.D. Mich. 1997). *See also, United States v. Pena*, 233

15

F.3d 170, 172, 173 (2d Cir. 2000) (prejudice presumed where defendant filed a notice of appeal *pro se*, but counsel failed to perfect the appeal due to mis-communication). Accordingly, because petitioner was prejudiced by the mis-communication with his counsel, he is entitled to a delayed appeal and need not show any likelihood of success on the merits of his claim.

### **Conclusion**

Accordingly, I recommend that petitioner's motion for relief pursuant to § 2255 should be GRANTED.

Dated:  October 28, 2005              /s/ Hugh W. Brenneman, Jr.
                                      Hugh W. Brenneman, Jr.
                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).