UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS HORTON,

    Petitioner,

v.                                        Case No. 1:03-cv-78
                                          (Related Criminal Case No. 1:01-CR-107)

UNITED STATES OF AMERICA,        HON. GORDON J. QUIST

    Respondent.
_____/

**ORDER REMANDING CASE TO MAGISTRATE JUDGE**

On October 28, 2005, United States Magistrate Judge Hugh W. Brenneman, Jr. issued a Report and Recommendation ("R & R") regarding Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Docket No. 41.) In the R & R, the Magistrate Judge recommended that Petitioner's motion to amend be denied, but that his § 2255 motion be granted based on the grounds of ineffective assistance of counsel, and that Petitioner be allowed to pursue a delayed appeal. The Court now has before it the Government's objection to the R & R. (Docket no. 42.) Specifically, the Government claims that the Magistrate Judge misapplied the test for ineffective assistance of counsel and argues that this Court should deny the § 2255 motion. For the following reasons, this Court will reject the R & R and will remand the case back to the Magistrate Judge for further application of the law.

In his § 2255 motion, Petitioner claimed that his counsel provided ineffective assistance because he failed to file an appeal even though Petitioner requested one. On December 1, 2003, the Magistrate Judge held a hearing to address the question of whether Petitioner had in fact requested an appeal. As required by 28 U.S.C. § 636, this Court has reviewed the Magistrate Judge's proposed findings and recommendations under the *de novo* standard of review. *See United States v. Shami*,

754 F.2d 670, 672 (6th Cir. 1985). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" 28 U.S.C. § 636(b)(1)(C). This Court has reviewed the entire transcript of the December 1, 2003, hearing, and specifically has reviewed the testimony of Petitioner and his counsel, Victor Bland. See *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

At the hearing, Petitioner unwaveringly testified that he specifically requested an appeal immediately after he was sentenced on February 25, 2002.

> Q. Now, after you were sentenced, did you ever have any opportunities to discuss the sentence with Mr. Bland?
> A. Directly after I was sentenced, yes.
>
> * * * *
>
> Q. What discussions did you have with Mr. Bland at that point?
> A. At that time I told him that the sentence was more than I expected; that I wanted to appeal the sentence. He explained to me that, I think the words were, "The judge padded the decision pretty well."
> And I expressed again that, I told him again that I wanted him to appeal because that was the only opportunity I had to change the sentence.
> Q. Now, did you see if Mr. Bland was taking any notes during that conversation?
> A. He was not taking notes.
> Q. How long did that discussion last?
> A. It may have have been ten minutes, 15 minutes, as an estimate.
> Q. Now, did Mr. Bland explain to you about any possible advantages or disadvantages that you would face about in terms of filing an appeal?
> A. No.

(Hearing Tr. at 58-59.)

Petitioner's counsel, Mr. Bland, was less certain about what transpired during the conversation that day. Mr. Bland testified:

> Q. Did you meet with Mr. Horton immediately after sentencing?
> A. I did.

\* \* \* \*

Q. So one of your purposes for that meeting was to see whether he wanted to appeal?
A. Yeah.
Q. Did he want to file an appeal in the case?
A. To the best of my recollection, no, not at that point.
Q. Why not?
A. And I don't remember blow by blow what we discussed. The one thought that keeps coming to me in my mind that I think we did discuss was the idea that if we couldn't get two points down with [the Government] joining us then I didn't see how you were going to get two points down on an appeal, something like that.

\* \* \* \*

Q. Did Mr. Horton expressly tell you whether or not he wanted to file an appeal?
A. The way I understood it he said he didn't want one at that time.

(Hearing Tr. at 106-07.)

At the end of the examination, the Magistrate Judge sought further clarification:

THE COURT: Okay. How clear are you about the defendant at that interview not asking you to file an appeal for him?
THE WITNESS: I am not razor sharp as to what took place in this interview in terms of my memory right now. The best thing – the only thing that really corroborates it for me is the statement in that letter that I wrote the next day. That would have been pretty close in time to when I interviewed Travis, and I can't imagine that if he had really wanted an appeal I wouldn't have signed, I think there's like a two-page packet, that I wouldn't have done that.

To say that I clearly remember everything that took place in the cage, I mean, to be honest with you, your Honor, no, I don't. I remember the general theme of, as I said, you know, if [the Government] was joining with us on two points it would have been kind of difficult, I thought, to get those two points. It's really hard for me to reconstruct, and that's why I wrote the letter.

\* \* \* \*

3

| | |
|---|---|
| THE COURT: | Was there any chance he could have said, look, please go ahead and file the appeal for me anyway even if it's an uphill battle, and when you got back to the office you could have simply forgotten that and simply sent off the letter you sent out? |
| THE WITNESS: | I couldn't rule that out but I don't think it's likely. I have to go – I'm not perfect. I wish Travis no harm. I honestly don't – the recollections I do have and the writing of the letter is the best evidence I've got.<br><br>Is there a margin of error in there? Yeah. I'm human. Do I think it happened that way? In all honesty, no. I can't imagine I would have written a letter wrong, not to say that I couldn't have, but that would be rare. |

(Hearing Tr. at 129-131.)

Based on this and other testimony, the Magistrate Judge found that:

Having found that a mis-communication or misunderstanding occurred between petitioner and his counsel, the court must determine the legal effect of this series of events. As a general rule, counsel's failure to perfect a direct appeal upon a client's request is a *per se* Sixth Amendment violation. *Ludwig*, 162 F.3d 459. In such cases, "a defendant is entitled to a delayed appeal and need not show any likelihood of success on the merits." *Regalado*, 334 F.3d at 525. <u>Here, however, counsel did not disregard a clear request to file an appeal; rather, counsel did not realize that petitioner desired to have an appeal filed until he received petitioner's December 11, 2002 letter. Nevertheless, I conclude that petitioner's counsel bears the responsibility for the missed deadline. Prejudice is presumed under the *Strickland* test when a mis-communication or misunderstanding between the client and counsel results in counsel's failure to file or perfect an appeal.</u> *See Edwards v. United States*, 246 F. Supp. 2d 911, 915-16 (E.D. Tenn. 2003); *Turner v. United States*, 961 F. Supp. 189, 190-91 (E.D. Mich. 1997).

(R & R at 15.) (emphasis added).

This Court has reviewed the transcript and finds that the Magistrate Judge's findings of fact are supported by the testimony. However, in its Objection, the Government also objects to the Magistrate Judge's presumption of prejudice based on a "mis-communication." "The Magistrate Judge also improperly presumed prejudice based on a purported mis-communication. These circumstances to [sic] do not compel a presumption of prejudice. Cases where prejudice is presumed

4

involve a Petitioner who asked counsel to file a notice of appeal, but counsel failed to do so." (Government's Objection at 8.)

This Court agrees with the Government that prejudice is presumed only where the defendant has specifically requested an appeal. *See Roe v. Flores-Ortega,* 528 U.S. 470, 477, 120 S. Ct. 1029 (2000) (stating that it is "professionally unreasonable" for a lawyer to fail to file an appeal when "specifically" instructed to do so); *Regalado v. United States,* 334 F.3d 520, 524-25 (6th Cir. 2003); *Ludwig v. United States,* 162 F.3d 456, 459 (6th Cir. 1998). Therefore, this Court rejects the Magistrate Judge's conclusion of law that "[p]rejudice is presumed under the *Strickland* test when a mis-communication or misunderstanding between the client and counsel results in counsel's failure to file or perfect an appeal." (R & R at 15.) In the R & R, the Magistrate Judge relied on two cases to support this legal conclusion, but, in fact, those two courts found that, in addition to there being a miscommunication or misunderstanding, the defendant had specifically requested an appeal. *See Edwards v. United States*, 246 F. Supp. 2d 911, 915-16 (E.D. Tenn. 2003) (finding that the defendant requested an appeal when he filed a notice of appeal *pro se*); *Turner v. United States*, 961 F. Supp. 189, 192 (E.D. Mich. 1997) (finding that the defendant had requested an appeal).

This Court therefore remands this case to the Magistrate Judge for further application of the law under the *Roe* and *Regalado* standard. If the court finds that no clear request was made, the court must then determine whether counsel consulted with the defendant about an appeal. *Roe*, 528 U.S. at 478, 120 S. Ct. At 1035. If counsel did not consult with the defendant, the court must ask a second and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes "deficient performance." *Id.* Failure to consult is not always unreasonable and deficient. *Id.* at 479, 120 S. Ct. at 1036. Rather, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would

want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480, 120 S. Ct. at 1036.

If counsel was not deficient, then the inquiry stops there and relief is not warranted. However, if the court finds that counsel's failure to consult was deficient, then the court must determine whether the defendant was prejudiced by the failure. "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S. Ct. at 1038.

Therefore,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation issued October 28, 2005 (docket no. 41), is **REJECTED** as the Opinion of this Court.

**IT IS FURTHER ORDERED** that this case is **REMANDED** back to the Magistrate Judge for further application of the law under the *Roe* and *Regalado* standard. Specifically, because the Magistrate Judge found that no clear request for an appeal was made, the Magistrate Judge should determine whether counsel consulted with the defendant about an appeal, and if not, whether the defendant was prejudiced by the deficiency.


Dated: January 5, 2006              /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE